# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 14, 2022

Lyle W. Cayce
Clerk

No. 20-50550

United States of America,

*Plaintiff—Appellee*,

*versus*

Jason Michel Chavez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:19-CR-191-2

Before Jones, Southwick, and Engelhardt, *Circuit Judges*.
Per Curiam:[*]

Jason Michel Chavez was convicted of crimes involving drugs and firearms. He was sentenced to consecutive terms of imprisonment and concurrent terms of supervised release. He appeals the district court's application of a two-level enhancement and imposition of discretionary conditions of supervised release. We affirm in part and vacate in part.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50550

## I.

The Midland Police Department began investigating the drug trafficking activities of William Rockhold in June 2019.  Having made several controlled purchases of methamphetamine from Rockhold during the investigation, the police obtained a search warrant for his apartment.  On August 1, 2019, they placed the residence under surveillance when they learned from a confidential source that Rockhold's source of supply was on his way to deliver methamphetamine to Rockhold.  They observed Chavez arrive in a pickup truck and enter the residence, carrying a small bag.  Believing that Rockhold's source of supply had arrived, the detectives executed the search warrant.

Inside the apartment they found a rifle in Rockhold's bedroom closet and a pistol inside a camouflage bag in his bedroom.  A search of Chavez's truck revealed a holster and ammunition that matched the pistol found in the bedroom and empty plastic bags.  Chavez was taken to the police station for questioning.

At the station, Chavez consented to an interview.  The officers detected no signs that he was intoxicated or impaired.  He initially denied any involvement in drug transactions, and the agents told him that he could help himself if he provided them information.  Eventually he stated that while he did not directly provide drugs to users, he functioned as a middleman, facilitating methamphetamine deals between his source of supply, who he knew only by a nickname, and Rockhold.  He also said that he had given Rockhold the rifle found in the apartment to hold as collateral for money he had borrowed from Rockhold.  Chavez was charged on two counts: (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine and (2) knowing possession of a firearm in furtherance of a drug trafficking crime.

No. 20-50550

At his trial, Chavez elected to testify and by then his story had changed. He said he had obtained methamphetamine from Rockhold but had never supplied Rockhold with methamphetamine. He denied any knowledge of the rifle found in the apartment. He also testified that he had been using methamphetamine approximately one hour before arriving at Rockhold's apartment and thus had no recollection of detectives searching Rockhold's apartment or of his interview at the station. Although he maintained he had no memory of the interview, he stated that he told the agents—only in order to help himself—that he served as a middleman in methamphetamine transactions. When the government proffered a photograph of Chavez, found on his cell phone, holding the rifle seized from Rockhold's residence, he again denied any knowledge of the rifle and insisted that the picture depicted a different weapon.

Following the jury trial, Chavez was convicted on both counts. The probation officer prepared a presentence report ("PSR") and, reasoning that Chavez had committed perjury, assessed a two-level enhancement for obstruction of justice under § 3C1.1. In summarizing the law, the PSR stated that "the district court must make independent findings that the defendant willfully attempted to obstruct justice" before it can impose the adjustment. On the first count, based on a criminal history category of I and including the two-level enhancement for obstruction of justice, the PSR calculated a total offense level of 40 and a guideline imprisonment range of 292 to 365 months. On the second count, it calculated a 60-month consecutive term of imprisonment. The PSR also recommended one special condition of supervisory release "[i]n addition to the mandatory and standard conditions of supervision adopted by the Court." Chavez made no objection to the PSR.

At sentencing, the district court confirmed that Chavez had reviewed the PSR and then adopted it without objection. The district court sentenced Chavez to consecutive terms of 292 months of imprisonment on the drug

No. 20-50550

count and 60 months of imprisonment on the firearm count, followed by concurrent five-year terms of supervised release on each count. The district court did not orally pronounce any conditions of supervised release, but the written judgment included mandatory, standard, and special conditions of supervised release. Chavez filed a timely notice of appeal.

## II.

Chavez advances two arguments on appeal. First, he contends that the district court's application of the two-level enhancement for obstruction of justice was inappropriate because the district court adopted the PSR without making its own "independent findings that Chavez willfully attempted to obstruct justice or that his misrepresentations were made with specific intent to obstruct justice rather than as a result of confusion, mistake, or faulty memory." Second, he asserts that the district court erred by including 17 standard conditions and two special conditions of supervised release in the written judgment when they were not orally pronounced at sentencing. We address each argument in turn.

## A.

We generally review a district court's application of the Sentencing Guidelines *de novo*, but "factual findings, such as a finding of obstruction of justice, are reviewed for clear error." *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008). If, however, the defendant did not preserve his objection by raising it before the district court, we review only for plain error. *United States v. Perryman*, 965 F.3d 424, 427 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2524 (2021). Here, Chavez neither objected to the obstruction of justice enhancement nor argued before the district court that it should make independent findings. Accordingly, we review for plain error. To establish plain error, Chavez must show a clear or obvious legal error not subject to reasonable dispute that affected his substantial rights. *Puckett v.*

4

*United States*, 556 U.S. 129, 135 (2009). We have the discretion to correct the error if he makes such a showing, but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Section 3C1.1 provides for a two-level enhancement if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to [] the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. The enhancement applies to perjury. U.S.S.G. § 3C1.1. cmt. n.4(B). "For purposes of § 3C1.1., a defendant commits perjury if he provides 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Smith*, 804 F.3d 724, 737 (5th Cir. 2015) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

It is preferable for the district court to make a separate and clear finding addressing each element of perjury, but a finding of obstruction "that encompasses all of the factual predicates for a finding of perjury" is sufficient. *Dunnigan*, 507 U.S. at 95. Nor must the sentencing court expressly find that the false testimony concerned a material matter so long as materiality is obvious. *United States v. Perez-Solis*, 709 F.3d 453, 470 (5th Cir. 2013). Moreover, the district court "need not make factual findings on its own; it is sufficient for the court to adopt adequate findings in a [PSR]." *Id.* at 470.

The PSR prepared by the probation officer and adopted without objection by the district court concluded that Chavez "willfully obstructed

or impeded, or attempted to obstruct or impede, the administration of justice." Noting that Chavez's statements at trial directly contradicted his prior statements, the PSR concluded that the trial testimony "constituted perjury and represent[s] a willful attempt to obstruct or impede the administration of justice." Indeed, Chavez's own testimony at trial conceded that his prior statements were contradictory, but he insisted that he had only made those statements to help himself. And yet while rationalizing these statements he simultaneously maintained that he had no memory of making them. All this the PSR documented, and "the district court adopted the adequate factual findings set forth in the PSR, as it was permitted to do." *United States v. Johnson*, 822 F. App'x 258, 262 (5th Cir. 2020).

Chavez argues on appeal that in his trial testimony he denied memory of the prior interview and did not state that he had previously confessed to middle-manning transactions to help himself. But that assertion is undermined by the trial transcript. The transcript shows that, although he may not have used the precise words "middle-manning," Chavez did testify at trial that he told the officers he would "introduce" Rockhold to people and that he "was just inventing things" to tell the officers so as to help himself. That exchange at trial is a perfectly reasonable foundation for the PSR's conclusion that "[Chavez] testified he told agents he was 'middle-manning' methamphetamine transactions to help himself."

Chavez also contends that his testimony regarding the rifle was immaterial because the indictment only charged him with possession of the pistol, and he had admitted to owning the pistol. That argument also fails because "material," for purposes of § 3C1.1, refers to any "evidence, fact, statement, or information that, if believed, would *tend to* influence or affect the issue under determination." U.S.S.G. § 3C1.1. cmt. n.6 (emphasis

No. 20-50550

added).    Chavez's duplicitous testimony about the rifle satisfies these criteria.

Finally, Chavez asserts that the PSR itself indicated, by stating that the district court must make independent findings about willfulness before imposing the enhancement, that he was not required to object to the enhancement at sentencing.  But we have expressly held that the district court need not make an explicit finding of willfulness. *United States v. Miller*, 607 F.3d 144, 152 (5th Cir. 2010) (citation omitted).  In adopting the PSR, the district court did all that was necessary.  Accordingly, the district court did not reversibly err by applying a two-level enhancement for obstruction of justice.

**B.**

We now turn to Chavez's challenge to the conditions of supervisory release.  A defendant has a due process right under the Fifth Amendment to be present at sentencing.  *United States v. Diggles*, 957 F.3d 551, 557 (5th Cir. 2020) (en banc), *cert. denied*, 141 S. Ct. 825 (2020).  That right implicates a pronouncement rule, which prevents a written sentence from imposing discretionary conditions of supervised release that were not orally pronounced at sentencing.  *Id.*  Thus, a district court must orally pronounce any condition of supervised release that is not already required to be imposed under 18 U.S.C. § 3583(d).  *Id.* at 559.

The written judgment here contained nine mandatory conditions, 17 standard conditions, and two special conditions.  Because the mandatory conditions largely mirror the conditions required by § 3583(d), mandatory conditions 1 to 8 did not require pronouncement and are not in dispute.  But the 17 standard conditions, the ninth mandatory condition, and the two special conditions—to the extent they differ from the first mandatory

7

condition[1]—are not required by § 3583(d).  As such, they are discretionary and did require pronouncement.  *Id.* at 559.

A district court satisfies the oral pronouncement requirement by notifying the defendant at sentencing what conditions are being imposed, thereby providing the defendant an opportunity to object.  *Id.* at 560.  The district court may do so by orally stating the conditions or by reference to a list of recommended conditions from a standing order or some other document, such as a PSR.  *Id.* 560–63.  But "the mere existence of such a document is not enough for pronouncement."  *Id.* at 561 n.5.  The district court must ensure that the defendant had an opportunity to review that list with counsel and orally adopt it when the defendant is in court and can object.  *Id.* at 560–63 & n.5; *cf. United States v. Martinez*, 15 F.4th 1179, 1181 (5th Cir. 2021).

The pronouncement requirement functions to provide the defendant notice of his sentence and an opportunity to object.  *Id.* at 560.  Our standard of review is thus affected by whether the defendant had opportunity to object and failed to do so.  We review for plain error if the defendant had opportunity to object and failed to do so.  *Id.* at 563.  But we review for abuse of discretion if the defendant did not have an opportunity to object.  *United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006).  If the written judgment conflicts with what the district court pronounced at sentencing, the oral pronouncement controls.  *Diggles*, 957 F.3d at 563 (citing *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006)).  The appropriate remedy in such a case is "remand to the district court to amend the written judgment to

---

[1] The first special condition closely resembles the first mandatory condition. Further, the fourteenth standard condition resembles the seventh mandatory condition and is consistent with the district court's pronouncement at sentencing that the defendant pay a mandatory special assessment.

conform to the oral sentence." *United States v. Omigie*, 977 F.3d 397, 406 (5th Cir. 2020) (quoting *Mireles*, 471 F.3d at 557).

Here, the district court adopted the PSR without objection after confirming that Chavez had reviewed it. The PSR proposed one special condition "[i]n addition to the mandatory and standard conditions of supervision adopted by the Court." The government asserts that this reference to conditions "adopted by the Court" incorporates a district-wide standing order that sets forth the same standard conditions later included in Chavez's written judgment. But the PSR did not specifically identify the standing order or include an appendix listing the challenged conditions. *Cf. United States v. Medel-Guadalupe*, 987 F.3d 424, 430 n.6 (5th Cir. 2021) (noting that special conditions were included in the PSR appendix and in a standing order which was reviewed by the defendant). And the district court never referred to the standing order or confirmed that Chavez had reviewed it with his counsel. *Cf. Diggles*, 957 F.3d at 561 n.5 (noting that "[a] document proposing conditions that a court orally adopts at sentencing may take a form other than the PSR" but the court must still "orally adopt the written recommendations when the defendant is in court"). Nor did the district court "confirm [Chavez's] review of any document listing" the conditions at issue. *United States v. Macedo-Benitez*, 832 F. App'x 895, 896 (5th Cir. 2021). More importantly still, the district court never stated that it was explicitly adopting the "standard conditions" recommended in the PSR, something *Diggles* clearly required. *Diggles*, 957 F.3d at 561 n.7 (noting that a defendant may object to conditions "when the court generally adopts the PSR" and "of course can object when the court adopts the conditions"). Accordingly, we are not persuaded that the district court satisfied the oral pronouncement requirement.

To be sure, an oral pronouncement at sentencing that the Court is imposing "standard conditions" may be sufficient to reference a district

court's particular standing order listing such conditions. *See Martinez*, 15 F.4th at 1181. But here, the PSR is ambiguous even with the benefit of hindsight. True, one could understand it to refer to the court's standing order, especially if one knew that such an order existed. But this purported cross-reference includes no temporal terms indicating that these unspecified conditions had *already* been adopted by the court when the PSR was prepared, or that Chavez was ever informed of them. For that reason, one could just as reasonably understand "adopted by the Court" as a reference to additional conditions the court might choose to orally pronounce at sentencing. This is why an oral pronouncement at sentencing that the district court is imposing certain conditions—even those labeled "standard conditions"—is necessary.

Our jurisprudence ensures that the pronouncement requirement "is not a meaningless formality" by insisting on giving the defendant notice of his sentence and providing him an opportunity to object. *Diggles*, 957 F.3d at 560. An ambiguous cross-reference in the PSR is insufficient to satisfy the pronouncement requirement when the district court does not orally adopt the conditions recommended in the PSR at sentencing.

The practice of this Circuit, both before and after *Diggles*, has been to remand pronouncement-error cases to the district court with instructions to amend the written judgment to reflect only the conditions orally pronounced at sentencing and those conditions which need not be pronounced. *See, e.g.*, *United States v. Fields*, 977 F.3d 358, 367 (5th Cir. 2020) ("The special condition was not included in the oral pronouncement and was omitted from the Presentence Report and its Addendum. It necessarily follows that the special condition must be stricken."); *United States v. Rivas-Estrada*, 906 F.3d 346, 351 (5th Cir. 2018) (remanding a case to the district court to amend its written judgment by removing unpronounced special conditions). "Our caselaw does not generally give the district court [a] second chance when it

fails to pronounce a condition, even though conditions have salutary effects for defendants, victims, and the public." *Diggles*, 957 F.3d at 563. Although we have recognized that remand without an opportunity to resentence constitutes a "stark remedy," *id.* at 563 n.11, we are bound by the rule of orderliness to adhere to this practice. *See, e.g.*, *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014). To depart from this remedy (*i.e.*, to remand the case to the district court so that it may resentence Chavez and pronounce the previously unpronounced conditions), would require our court to take this matter en banc and alter its binding caselaw. *See Diggles*, 957 F.3d at 563 n.11; *Fields*, 977 F.3d at 367.

While we must remand with instructions to amend the judgment to exclude the unpronounced conditions, we note that in certain circumstances the district court may later modify and enlarge the conditions of supervised release. *See* 18 U.S.C. § 3583(e); FED. R. CRIM. P. 32.1(c). As long as the district court adheres to the procedural protections of these authorities, we see nothing that prevents the court from modifying Chavez's conditions of supervised release to include the Western District's standard conditions and the two special conditions that it previously did not pronounce. *Cf. United States v. Parisi*, 821 F.3d 343 (2d Cir. 2016).

This court decided *Diggles* on April 29, 2020. *Diggles* clearly set forth proper procedure by which to satisfy the pronouncement requirement for conditions of supervised release at sentencing. But we continue to see cases where district courts purportedly failed to follow the clear mandate of *Diggles*. In the hope of avoiding repeated cases like this one, we reiterate the lessons of *Diggles* here:

- A court is statutorily required to impose the conditions listed in 18 U.S.C. § 3583(d). For these conditions—which are sometimes called "mandatory conditions"—notice to a

No. 20-50550

defendant in the PSR and pronouncement at sentencing is preferred. But because the Court is required to impose these conditions by law, a failure to give notice and pronounce them does not prevent a district court from imposing the § 3583(d) conditions in a written judgment.

- The district court must pronounce all other conditions—whether labeled "standard" or "special"—at sentencing. The surest way to abide by the pronouncement requirement is to include the list of all such conditions in the PSR (including those conditions sometimes labeled "standard" conditions or listed in a standing order) and to explicitly state at sentencing that the court is imposing the conditions recommended in the PSR after confirming the defendant has read the conditions. This ensures that the defendant has adequate notice and an opportunity to object. To be sure, the district court need not recite the entire list of what are often called "standard conditions" at sentencing. Rather, stating something as simple as "The Court imposes the standard conditions, as listed in the PSR" or "as listed in the district court's standing order" is sufficient. We have recently held that if the PSR gives notice that standard conditions are recommended, and the district court pronounces that it is imposing the standard conditions, the pronouncement requirement is fulfilled in a district that has issued a standing order which provides notice to the defendant of the standard conditions. *See Martinez*, 15 F.4th at 1181. It is also advisable for the Court to orally impose any conditions specific to the defendant that it is sentencing, along for reasons for imposing such conditions, to avoid running afoul of the articulation requirement.

No. 20-50550

Particularly given the "stark remedy" that we must impose when a district court errs in pronouncing conditions, we hope and expect that district courts will adhere to these straight-forward procedures going forward.

## III.

Chavez's sentence is AFFIRMED in part and VACATED in part. On remand, the district court is instructed to amend the written judgment to conform to the oral pronouncement.